# Lessee of the Mayor, Aldermen and Citizens of Philadelphia *against* Thomas Clifford and John Clifford.

Qu. whether a patent granted to the mayor, &c. of Philadelphia in trust for the interment of strangers, be valid under the act of assembly of 8th April 1786? Where one is in possession of lands at the time of an ejectment served, and appears and pleads generally, he cannot upon trial narrow his defence to part of the lands in his possession, but the jury will give a verdict as to the whole.

EJECTMENT for a large lot of ground 316 feet in length on Schuylkill Front street, and 396 feet in breadth on Vine street.

The plaintiff claimed the premises under a patent to the lessors, from the Supreme Executive Council, dated 13th December 1790, for the interment of deceased strangers, and such other persons who may not have been in communion with any religious society at the time of their decease agreeably to the act of assembly passed on the 8th April 1786.

Mr. Rawle for the defendants contended, that the plaintiff must become nonsuit, having shewn no title. The act of 27th November 1779, 1 St. Laws 822, vested the estate of the late proprietaries in this commonwealth. By another act passed on the 10th April 1781, the Supreme Executive Council was impowered to sell such and so many of the vacant city lots, as would be sufficient to redeem such part of the bills of credit emitted by a former law of the 28th March 1780, as should not be redeemed by the proceeds of the sale of Province island, 1 St. Laws 896. sect. 2; and by the 3d sect. the purchasers under the deed or grant from the president or vice president in council, became seized of a sure and indefeasible estate in fee simple. No power is given by any clause in the act of 1781 to the executive, to make deeds or grants to any person except *bona fide* purchasers. Another law passed on the 8th April 1786, 2 St. Laws 452, on which the present patent is supposed to be founded;

4 YEATES—17

[Philadelphia, Mayor, &c. Lessee of, *v.* Clifford.]

by which it is directed that such of the city lots, as had reverted to or remained the property of the state, (excepting eight of the same lots particularly specified) should be sold by the Supreme Executive Council. Then follows the proviso, which authorises and requires the council to reserve so many of the public lots, as shall be at least 200 feet, and not more than 400 feet square, to be *appropriated as a burial ground for the interment of strangers and others, &c. The 3d section provides that the titles shall be made according to the tenor and terms of the act of 10th April 1781, and by the 6th section, the proceeds of the sales of the lots are to be paid to the receiver general.

*273]

The powers in the Supreme Executive Council to grant a patent must necessarily depend on some legislative act, which in the laws of 1781 and 1786, are confined to purchasers. Under the present deed, it is impossible that any legal interest can vest in the lessors of the plaintiff.

The court stopped the counsel on the part of the plaintiff, and said they would reserve the point for further discussion, in case the same became necessary.* The trial then proceeded.

The defendants claimed under Francis Smith, an original purchaser of 5000 acres, under deeds of lease and release from William Penn, dated 10th September 1681, by which he became intitled to two city lots, and 100 acres of liberty land. The difficulty lay in establishing the pedigree and descents under the first purchaser. The High street lot was laid out on the 16th October 1771, and returned on the 18th November following, containing 132 feet by 306 feet.

Thomas Clifford obtained a survey of part of the lot in dispute, containing 204 feet in front, by the city regulators in the fall of 1787, inclosed it by a fence, and claimed the whole lot under Smith. The defendants were in possession of this portion of the ground, when the ejectment was brought; but upon the trial claimed only the middle lot, containing 102 feet front, by 396 feet deep, designated in the map of Thomas Holme (the first surveyor general of the late province, who died in 1701,) No. 42, the other parcel, being marked No. 43.

A general appearance had been entered to the ejectment; and a question was made, how their verdict should be taken, in case the jury should establish the possession of the defendants in lot No. 42.

†YEATES and BRACKENRIDGE, Justices, were of opinion, that as the defendants were in possession of both portions of the ground, containing 204 feet in front, when the ejectment was served, and had appeared generally thereto, and confessed lease, entry and ouster, in pursuance of the common rule, they could not now narrow their defence to part of their possession; and

---

* Judgment was afterwards entered *pro quer.*

†*Absente*, SHIPPEN, C. J.

[Downing v. Philips.]

that the plaintiff was upon the trial, entitled to a verdict for such part of *the ground as he could shew title to, and could [274* prove to be in the occupation of the defendants at the time of the commencement of the suit.    Vid. 1 Lord Ray. 729. Bull. 98, 110.    Law of Ejectments.

SMITH, J. thought the verdict ought to be taken for the defendants on lot No. 42 ; and as to the northern lot, No. 43, the plaintiff should be called and nonsuited, on account of the defendants not confessing lease, entry and ouster, pursuant to the common rule ; and thereupon judgment would be entered for the plaintiff against the casual ejector for lot No. 43.    This is a question as to mere form, because the verdict taken in either way, will effect no difference, either as to costs or mesne profits. 2 Burr. 668.

The jury found a verdict for the defendants, as to lot No. 42 ; and for the plaintiff as to lot No. 43, as designated in the old map of Holme.

Messrs. E. Tilghman, Hopkinson and Dickerson, *pro quer.*